UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO.  03-240

SAFECO INSURANCE COMPANY,                                                             PLAINTIFF,


v.                                         **OPINION & ORDER**


GARY RITZ, Individually, NOLITTA RITZ,
Individually, JASON D. GREEN, and
WILLIAM A. WEBB,                                                                       DEFENDANTS.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Plaintiff's Motion for Summary Judgment (Rec. No. 25) and Motion to Dismiss Counterclaim (Rec. No. 49).  For the following reasons, the Court DENIES both motions.

**I.     FACTS.**

The following recitation of facts is based on the pleadings submitted in the record of this matter.

**A.     Traffic Accident with Bialkoski and Spradlin.**

On August 5, 2003, the Plaintiff Safeco Insurance Company ("Safeco") filed this action for declaratory relief.  (Rec. No.1, Complaint).  Safeco is a Washington citizen.  The Defendants are Gary and Nolitta Ritz (the "Ritzes"), Jason D. Green and William A. Webb.  The Defendants are all Kentucky citizens.

The Ritzes' car was insured by Safeco.  The limits of liability were $25,000 per person and $50,000 per occurrence.  On or about June 18, 2002, the Ritzes' son, Josh, drove Defendant William A. Webb's son, Shane, and Defendant Jason Green to the store in his parent's insured car.  (Rec. No.

1, Complaint, ¶ 14). Josh hit another vehicle which was driven by Gertie Bialkoski with Roy Spradlin as a passenger. (Rec. No. 1, Complaint, ¶ 15). All the individuals involved sustained bodily injuries. (Rec. No. 1, Complaint, ¶ 17).

> **B.  Safeco Settles with Bialkoski and Spradlin for Policy Limits and Webb Makes Claim.**

On or about June 20, 2002, an attorney for Bialkoski and Spradlin informed Safeco that they would be making a claim. (Rec. No. 1, Complaint, ¶ 19). On or about July 29, 2002, Safeco contacted Shane Webb's mother to inform her that the Ritz's policy limits were not very high. (Rec. No. 1, Complaint, ¶ 20). On or about October 10, 2002, Safeco received the basic reparation benefits application from Jason. Safeco sent him a letter informing him that the policy's coverage limits had already been exhausted. (Rec. No. 1, Complaint, ¶ 22).

On or about December 18, 2002, counsel for Bialkoski and Spradlin informed Safeco that Bialkoski's bills for medical treatment arising from injuries allegedly sustained in the accident were more than $50,000 and that Spradlin's bills were more than $20,000. (Rec. No. 1, Complaint, ¶ 23).

As of December 23, 2002, Safeco had received no indication from Jason or Shane that they desired to pursue a bodily injury claim. (Rec. No. 1, Complaint, ¶ 24). By January 7, 2003, Safeco informed Nolitta Ritz that even if liability for the accident could be apportioned equally to the operators of the two vehicles involved, the value of the bodily injury claims of Bialkoski and Spradlin were more than Ritz's policy limits. (Rec. No. 1, Complaint, ¶ 25). On or about February 24, 2003, Bialkoski and Spradlin each demanded $25,000 from Safeco. (Rec. No. 1, Complaint, ¶ 27).

On or about March 7, 2003, with Nolitta Ritz's agreement, Safeco sent a letter to counsel for

2

Bialkoski and Spradlin offering them $25,000 each contingent on full and final release. (Rec. No. 1, Complaint, ¶ 31). On or about May 29, 2003, Safeco settled the claims of Bialkoski and Spradlin. Safeco states that, at the time, it had received no notice of any other bodily injury claims. (Rec. No. 1, Complaint, ¶ 32).

On or about June 19, 2003, Shane Webb's counsel made a claim to Safeco for injuries he allegedly sustained in the accident. (Rec. No. 1, Complaint, ¶ 34). In its Complaint, Safeco states, it believes Webb will file suit against it. (Rec. No. 1, Complaint, ¶ 35). Safeco also states that it is "also reasonable to anticipate that Jason Green may now also file suit." (Rec. No. 1, Complaint, ¶ 35).

  **C.** **Safeco Files this Action.**

Safeco filed this action seeking a declaration 1) that it is not obligated under the policy with regard to any claims resulting from the accident; 2) that it has no duty to defend the Ritzes with regard to any claims resulting from the accident (Rec. No. 1, Complaint, Prayer for Relief, ¶ 3); and that it acted reasonably and in good faith in settling the claims of Bialkoski and Spradlin. (Rec. No. 1, Complaint, Prayer for Relief, ¶ 6).

The Ritzes filed an answer to Safeco's Complaint stating that they demand that Safeco provide a defense to any further claims against the Ritzes and that it pay the claims made by any additional claimants. (Rec. No. 3, Response at 4). The Ritzes also filed a Counterclaim charging that Safeco acted in bad faith in settling the claims with Bialkoski and Spradlin and in not allocating a portion of the coverage to other individuals that were injured in the wreck. In their Counterclaim, the Ritzes demand a declaration 1) that Safeco is obligated to defend them and to pay any potential judgments against them; and 2) that Safeco acted in bad faith in settling the claims of Bialkoski and

Spradlin. (Rec. No. 3, Ritz Response).

Defendant William Webb filed an answer to Safeco's complaint. (Rec. No. 13, Answer). Defendant Jason Green has not filed an answer. On June 1, 2004, Shane Webb filed a claim in Johnson Circuit Court against Joshua Ritz to recover for bodily injury sustained as a result of the accident. (Rec. No. 47, Webb's Response at 4, n.1).

### D. Safeco's Motion to Bifurcate and Stay Counterclaim.

On November 5, 2003, Safeco moved to bifurcate its Complaint for Declaratory Action from the Ritzes' Counterclaim and for an Order staying the proceedings in the Counterclaim including discovery until a decision has been reached on the merits of the Declaratory Action. (Rec. No. 9). That motion was unopposed. On December 12, 2003, the Court granted the motion. (Rec. No. 14).

### E. Safeco's Motion for Summary Judgment on Declaratory Action.

On July 30, 2004, Safeco filed its Motion for Summary Judgment on its Declaratory Action. (Rec. No. 25). On October 20, 2004, the law firm of Preston and Daniels moved to withdraw as counsel for the Ritzes, stating that the Ritzes' attorney, Scott Preston, had died. (Rec. No. 28). This Court granted that motion and ordered the Ritzes to obtain substitute counsel within 30 days. (Rec. No. 31, Order). The Court further ordered that the Ritzes' new counsel should respond to the Motion for Summary Judgment within 21 days of entering its appearance in this matter. As of this date, no counsel has entered an appearance for the Ritzes and the Ritzes have not responded to Safeco's Motion for Summary Judgment.

At a telephonic status conference of this matter, the Court *sua sponte* raised the issue of this Court's subject matter jurisdiction over this matter and ordered the parties to brief the issue. The Court further ruled that the Ritzes and William Webb did not have to respond to Safeco's Motion

for Summary Judgment until the issue of jurisdiction had been resolved. (Rec. No. 38).

By Opinion and Order dated October 7, 2005 (Rec. No. 46), the Court accepted jurisdiction over this action and ordered the Defendants to file an answer to Safeco's Motion for Summary Judgment within 30 days of the Opinion and Order. Webb responded to the Motion for Summary Judgment. Neither the Ritzes nor Green have filed a response. On November 15, 2005, Safeco filed a Motion to Dismiss the Ritzes' Counterclaim (Rec. No. 49) on the basis that the Ritzes had failed to prosecute their counterclaim and had failed to obtain new counsel.

## II. STANDARD ON SUMMARY JUDGMENT.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.*, 822 F.2d at 1435-36. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific

portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

### III. ANALYSIS.

Again, with its Complaint, Safeco seeks a declaration 1) that it is not obligated under the policy with regard to any claims resulting from the accident; 2) that it has no duty to defend the Ritzes with regard to any claims resulting from the accident (Rec. No. 1, Complaint, Prayer for Relief, ¶ 3); and that it acted reasonably and in good faith in settling the claims of Bialkoski and Spradlin. (Rec. No. 1, Complaint, Prayer for Relief, ¶ 6).

In its Motion for Summary Judgment, Safeco argues that 1) it had a right to settle the claims with Bialkoski and Spradlin under the express terms of the policy; 2) because it had a right to settle the claims, it no longer has a duty to defend the Ritzes in any future claims as a result of the accident including Shane Webb's claim; (Rec. No. 26 at 5-6); and 3) that the terms of the insurance policy are not against public policy. (Rec. No. 26 at 7). Safeco asks the Court to declare that "the Safeco policy limits have been exhausted and no further coverage is available to any remaining claimants and no duty to defend exists as a result of the exhaustion of the limits." (Rec. No. 26 at 8).

In his response, Webb appears to argue that 1) even assuming Safeco could settle with Bialkoski and Spradlin for the full policy limits as it argues, its duty to defend does not end when its limits of liability for coverage have been exhausted (Rec. No. 47 at 8); and 2) to the extent that the policy provision regarding Safeco's settlement authority violates the Kentucky Unfair Claims Settlement Practices Act, KRS 304.12-230(6), the provision is void. (Rec. No 47 at 6). The Court will first dispense with Webb's arguments.

### A. Duty to Defend Provision is Valid.

7

>The applicable provision of the insurance policy states:
>
>We will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for bodily injury or property damage not covered under this policy.

(Rec. No. 1, Complaint, Exhibit, Policy, Part A(A)).

Under Kentucky law, "an insurer has a duty to defend if there is an allegation which might come within the coverage terms of the insurance policy, but this duty ends once the insurer establishes that the liability is in fact not covered by the policy." *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 635 (Ky. 2005). Accordingly, the provision of the policy providing that Safeco's duty to defend ends when the policy limits have been exhausted is valid under Kentucky law. Thus, assuming that Safeco's settlement with Spradlin and Bialkoski was valid, it no longer has any duty to defend the Ritzes' in any future claims against them arising from this accident.

### B. Safeco had Authority to Settle in "Good Faith."

Webb also argues that the policy provision granting Safeco authority to settle or defend, as it considers appropriate, claims or suits for damages is void to the extent that it violates KUCSPA at KRS § 304.12-230(6). (Rec. No 47 at 6). It is certainly true that any contract in contravention of a statute is void as against public policy. *Atkins v. Atkins' Adm'r*, 262 S.W, 268, 270 (Ky. 1924); *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 520 (5th Cir. 2005)(insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy). Nevertheless, it is also true that where a contract can be

construed as consistent with state law, it should be. *Leslie County v. Maggard*, 279 S.W. 335, 338 (Ky. 1926).

Under KUCSPA, an insurance company must act "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." KRS § 304.12-230(6). Accordingly, the Safeco policy provision must be read to permit Safeco to settle, as it consider appropriate, any claim or suit so long as it does so "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." *See Manchester Insurance & Indemnity Co. v. Grundy*, 531 S.W.2d 493, 498 (Ky. 1975)("[t]here is an implied covenant in the insurance policy of good faith and fair dealing. This implied covenant was a contractual duty to protect the insured from the risk of having a judgment rendered against him greatly in excess of the limits of the policy. Under the terms of the policy, the insurer alone had the right and power to settle.")(citation omitted).

   **C.**  **Discovery on whether Safeco acted in Good Faith has been Stayed.**

As for Safeco's arguments, with its Motion for Summary Judgment, Safeco asks the Court to declare that "the Safeco policy limits have been exhausted and no further coverage is available to any remaining claimants and no duty to defend exists as a result of the exhaustion of limits." (Rec. No. 26 at 8). The issue of whether the policy limits have been validly exhausted, however, depends upon whether Safeco acted in good faith when it settled with Bialkoski and Spradlin for the policy limits. The Court cannot find that Safeco has no duty to defend the Ritzes or any further duties to the Ritzes without first determining whether Safeco acted in bad faith in settling with only certain claimants for the full policy limits.

As a result of the unopposed motion of Safeco, however, adjudication of the issue of whether

Safeco settled with Bialkoski and Spradlin for the full policy limits in good faith, including all discovery on that issue, has been stayed. Presumably, for this reason, the parties have submitted very little evidence on this issue in the record at this point. The sole evidence presented by the parties on the Motion for Summary Judgment is two pages of deposition testimony and the policy itself. In light of the stay, this Court cannot make a determination at this point as to whether Safeco acted in bad faith in settling with certain claimants to the exclusion of others.

Hence, while the Court can find as a matter of law, as it has, that the policy's settlement and duty-to-defend provisions are valid under Kentucky law, the Court cannot find as a matter of law at this time that Safeco rightly settled for the full policy limits and that, therefore, Safeco has no further duty with regard to any claim against the Ritzes resulting from the accident.

### D.      Factors in Determining Whether Insurance Company Settled in Bad Faith.

Kentucky courts have addressed bad faith claims where an insurance company, instead of settling a claim against an insured, challenges the claim and litigates it and a verdict is entered against the insured in excess of the policy limits. The insured then asserts a bad faith claim against the insurer for failure to settle the claim. *See, e.g., Manchester Insurance & Indemnity Co. v. Grundy*, 531 S.W.2d 493 (Ky. 1975). Neither the parties nor the Court have been able to locate any Kentucky case involving a bad faith claim where the insurer settles with certain claimants to the exclusion of other claimants. Nevertheless, in deciding a question of state law in a diversity case, the federal court must make an educated guess as to what the state Supreme Court would decide if the question were presented to it. *Ann Arbor Trust Company v. North American Company For Life and Health Insurance,* 527 F.2d 526, 527 (6th Cir.1975).

In cases involving a claim of bad faith for failure to settle with a single claimant, the

Kentucky Supreme Court has held that KUCSPA "only requires that an insurer make a good faith attempt to settle any claim, for which liability is beyond dispute, for a reasonable amount." *Coomer v. Phelps,* 172 S.W.3d 389, 395 (Ky. 2005). In addition, the Kentucky Supreme Court has held that "an insurer cannot be held to have acted in 'bad faith' by failing to settle a claim unless it is shown that the insurer either knew there was no reasonable basis for denying the claim or acted in reckless disregard for whether such a basis existed. An insurer is entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Bentley v. Bentley*, 172 S.W.3d 375, 378 (Ky. 2005)(quotations and citation omitted).

Mere negligent failure to settle within the policy limits or errors of judgment are insufficient to constitute bad faith. *Motorist Mutual Insurance Co. v. Glass*, 996 S.W.2d 437, 451 (Ky. 1997). The test for a bad faith "failure to settle" claim involving a single claimant is: "[d]id the insurer's failure to settle expose the insured to an unreasonable risk of having a judgment rendered against him in excess of the policy limits? If the question is answered 'yes" by the trial court after weighing and evaluating the various factors, then the insurer is guilty of 'bad faith.'" *Id*. (quoting *Manchester* , 531 at 501).

Among the factors to be considered in determining the existence of bad faith are (1) whether the injured party offered to settle for the policy limits or less, (2) whether the insured made a demand for settlement on the insurer, and (3) the probability that the injured party would obtain a jury verdict which would exceed the policy limits. *Id*. (citing *Manchester*, 531 S.W.2d at 500).

Consistent with *Manchester*, where there are multiple claimants, the test for whether an insurer acted in bad faith in settling with certain claimants to exclusion of others is whether the settlement exposes the insured to an unreasonable risk of having a judgment rendered against him

in excess of the policy limits by those excluded from the settlement.

Among the 'various factors' to be considered in determining the existence of bad faith are (1) whether the settlement offers of all the claimants totaled the policy limits or less, (2) whether the insured demanded that the insurer settle with all claimants, and (3) the probability that the claimants excluded from the settlement would obtain a jury verdict or verdicts against the insured which would exceed the policy limits.

*Manchester* makes clear that the above factors are not the only factors to consider in a failure-to-settle case. Thus, in determining whether an insurer settled in bad faith with certain claimants to the exclusion of others, the Kentucky Supreme Court would likely look to courts in other jurisdictions who have addressed this issue.

Under Kansas law, there are eight factors to be considered in determining whether an insurer breached its duty of good faith to an insured in settling with certain claimants to the exclusion of others:

> [1] the strength of the injured claimant's case on the issues of liability and damages; [2] attempts by the insurer to induce the insured to contribute to a settlement; [3] failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; [4] the insurer's rejection of advice of its own attorney or agent; [5] failure of the insurer to inform the insured of a compromise offer; [6] the amount of financial risk to which each party is exposed in the event of a refusal to settle; [7] the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and [8] any other factors tending to establish or negate bad faith on the part of the insurer.

*Levier v. Koppenheffer*, 879 P.2d 40, 46-47 (Kan. App. 1994).

Under Florida law, the insurer must: (1) fully investigate all claims arising from the multiple claim accident; (2) seek to settle as many claims as possible within the policy limits; (3) minimize the magnitude of possible excess judgments against the insured by reasoned claim settlement; and

(4) keep the insured informed of the claim resolution process. *TIG Insurance Co. v. Smart School*, 2005 WL 3199445 (S.D. Fla., October 6, 2005)(citation omitted).

In *Carter v. State Farm Mutual Automobile Ins. Co.*, 33 S.W.3d 369 (Tex. App. 2000), the Texas Court held that an insurer did not act in bad faith in settling with certain claimants to the exclusion of others where the insurance company requested that all potential claimants meet for a settlement conference and that request was denied by the plaintiff claimant. *Id*. at 371-72. In addition, the insurance company notified the potential claimants that it had received a demand by one claimant for one-half the policy limits and, when it accepted that offer, notified the other potential claimants of the settlement. *Id*. Further, at a later settlement conference of the remaining claimants, the plaintiff claimant refused to accept a sum less than the total remaining policy limits. *Id*. Accordingly, the Court held that the insurance company did not act in bad faith when it settled with the two remaining claimants who were willing to negotiate the settlement of their claims. *Id.*

A determination of whether Safeco acted in bad faith when it settled with certain claimants to the exclusion of others will require the Court to consider the various factors discussed above. Because discovery on the issue of bad faith has been stayed in this action and, hence, there is little evidence on this issue in the record, the Court cannot determine at this time whether Safeco acted in bad faith. Accordingly, the Court cannot determine whether the policy limits have in fact been rightly exhausted, thereby ending Safeco's duties to the Ritzes with regard to this accident. For this reason, Safeco's Motion for Summary Judgment must be denied.

The Court notes, however, that, the Ritzes have the burden of proving their claim that Safeco acted in bad faith when it settled with Bialkoski and Spradlin. *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Accordingly, if the Ritzes have abandoned their Counterclaim, the Court must find

no evidence of bad faith in this matter. For this reason, the Court will order the Ritzes to file a notice with the Court within 10 days of the entry date of this Order indicating whether they intend to prosecute their Counterclaim.

      **E.    Safeco's Motion to Dismiss Counterclaim.**

Safeco has also moved to dismiss the Ritzes' Counterclaim on the basis that the Ritzes have failed to prosecute the claim and have failed to obtain new counsel. As discussed, however, pursuant to Safeco's motion, all proceedings on the Counterclaim have been stayed. Accordingly, the Court cannot dismiss the claim for failure to prosecute. Furthermore, the Ritzes are not required to obtain new counsel to prosecute the Counterclaim. Though the Court does not believe it is in their best interest, the Ritzes have the right to represent themselves in this matter. Thus, the Court cannot dismiss the Counterclaim on the basis that the Ritzes have not obtained new counsel and Safeco's Motion to Dismiss must be denied.

      **IV.    ORDER.**

Accordingly, for all the above reasons, the Court hereby ORDERS as follows:

1)    Within ten days from the entry date of this Opinion and Order, the Ritzes shall file a notice indicating whether they intend to prosecute their Counterclaim. Failure to file such notice shall result in dismissal with prejudice of the Counterclaim;

2)    The stay entered in this action by Order dated December 11, 2003 is hereby lifted and the December 11, 2003 Order is hereby VACATED;

3)    If the Ritzes file a notice indicating they intend to prosecute the Counterclaim, the parties shall have a period of 30 days from the date of the notice to conduct discovery on the issue of whether Safeco settled with Bialkoski and Spradlin in good faith. The

parties shall have 60 days from the date of the filing of the notice to file dispositive motions on the issue of whether Safeco settled with Bialkoski and Spradlin in good faith with response and reply times to follow pursuant to the Local Rules;

4) Safeco's Motion for Summary Judgment (Rec. No. 25) is DENIED; and

5) Safeco's Motion to Dismiss (Rec. No. 49) is DENIED.

This 12th day of January, 2006.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge